Thank you. Please be seated. We'll start the call, and Madam Court, please call the first case. 3-0-9-0-9-3-3, People of the State of Illinois, by the name of Thomas D. Arado, v. Nicholas T. Shelley, counsel of the Fletcher P. Hamill. Counsel, you may proceed. Good morning, Your Honors. My name is Fletcher Hamill, and I represent the defendant at the law, Nicholas Sheley, in the police court and counsel. Your Honors, there are two issues raised in this case. First, whether the defendant was improperly denied his right to self-representation, and secondly, whether the judge conducted an adequate inquiry into the defendant's post-trial claims of ineffective assistance at counsel. I plan on spending most of my time talking about the first issue. If you have any questions about the second issue, of course, I'd be happy to answer them. As to the first issue, the facts can be briefly summarized. The defendant made several pretrial requests to proceed pro se. It culminated in his filing a written motion asking to proceed pro se. The judge held a hearing on it, a much lengthy hearing. He considered the defendant's behavior during all of those hearings. He also considered two psychiatric reports that had actually been prepared in response to a request in the defendant's public Knox County case, which happened to be a capital murder case. Which has concluded. Which, yes, that's all I hear. I just found that out this morning. The defense attorney opposed the motion on the grounds that the United States Supreme Court's decision in Indiana v. Edwards allowed the judge to deny the defendant's right to self-representation based on his incompetence, his inability to do it. Ultimately, what the judge found, though, was apparently that he found that the defendant was capable of self-representation because he knew that as a defendant, if this was your own case in Knox County, I would allow you to go pro se. But nevertheless, he denied him his right to go pro se on grounds that the defendant might do or say something that would harm his chances in his other case. And put in a nutshell, my position in this case is that there is no authority for a judge to deny a defendant's constitutional right to self-representation based on the possibility that he might harm his own interests in another case. You're saying that that analysis would basically say that you don't have a right to self-representation unless you're a qualified attorney. Right. And some would argue that qualified attorneys shouldn't represent themselves in their own cases. So it could apply to everyone. It's a whole different story. Right. So that's just in a nutshell. Now, this issue has kind of evolved a bit in the briefing where I argued it under Edwards, obviously, and the state has responded by conceding that Edwards doesn't apply here, and instead is asking your honors to basically create a new exception to the right to self-representation. And that's where people who are fit for trial don't have a severe mental illness, but nevertheless are too disruptive to be allowed to go pro se and preemptively denying them that right before they actually are disruptive in court. You know, if someone in the court is very disruptive, then the judge can do something about that. Right. He can remove him from the courtroom. And that's actually the case, Illinois v. Allen, is I think the genesis, kind of where the state's trying to find support for this deprivation of the right to go pro se, where under Allen you could deny the defendant his right to be present if the defendant engages in disruptive conduct and is warned and then continues to engage in disruptive conduct. And that's what's key, because what the state's trying to do is there is at least a footnote in Frederick v. California that suggests that Allen might apply to the right to self-representation. However, what the state is trying to do is extend that from a judge responding to disruptive behavior that actually occurs in the courtroom to a judge preemptively. Well, they're allowing the judge to speculate. I'm sorry? Their argument is the judge is entitled to speculate. Right. And I don't believe Allen allows that. If you look at Allen, there's two aspects in Allen that really preclude this kind of preemptive denial of rights. And first of all, it's in the holding itself. The court says if the defendant behaves disruptively, is warned, and then continues to behave disruptively, then you can deny him his right. Well, obviously that doesn't happen in a case like this where he hasn't behaved disruptively to begin with. Well, can you have an anticipatory disruption because of past behavior in either motion or in other trials and use that information to guide you in a future trial? I think to fall under Allen, I think that you would need even more than that, because the second aspect of Allen here is that the court held that once the defendant is removed from the courtroom, he has to be let back in if he can demonstrate that he is willing and capable of not disrupting the proceedings anymore. So if that's the case, then even if you can, you can certainly look at what the defendant has done in past proceedings and other cases, but there has to be something here and now, because if the defendant, even if he has passed misconduct, if he is standing before the judge and demonstrating that he is at presently capable and willing to not disrupt the proceedings, then Allen can't apply. But everything is in that demonstration. I mean, based on past behavior, couldn't the trial judge ask a series of questions in light of Allen and determine whether or not there's a likelihood that he's going to be disruptive like he has in past cases or past cases or past motions and make that determination in order to see if he's going to be different based on his conduct before the court, before the trial? I think that, yeah, I think theoretically he could. What in the record would show that he's been passed that one motion where he's denied? Well, I think that's where the problem is here, is that's what's lacking. There's just no indication. Everything in this case indicates that the defendant was willing and capable of not only representing himself but doing it within the decorum. So they didn't have an outburst, though, at the ruling by the trial court? He had a short outburst shortly after the ruling denying his right to pro quo pro se. It's also after, it's actually not immediately after that ruling, but after the judge made that ruling and then went on to rule that the defense counsel, who had just been foisted upon the defendant, his motions that he filed untimely weren't going to be heard as merits. So it was after that, and it was after the fact, and there is authority. And this was a public defender, not a county court? This was, right. There is, at least one of the state's cases, Dorian. Actually, the court, it's a pre-Foretta, pre-Allen case, but it is a case involving whether or not he was granted the right to proceed pro se. And in that case, the court actually refused to consider anything that happened after the judge made that determination. So they refused to consider the defendant's actual conduct at trial. So under that case, it wouldn't be appropriate to consider that one outburst from this defendant that occurred after the judge made this decision. However, if you do consider that outburst, I would say that it was a relatively minor outburst. One, it was quickly removed from the courtroom. It takes up about half a page of transcript of that. It was handled. It was removed, and he was brought back and everything, and he never did it again, and everything proceeded as it should have. I don't think even if you take that one outburst, even if that had happened in front of the jury, that would not have caused the kind of disruption that Illinois v. Allen or that Indiana v. Edwards are talking about. And that's just not the kind of – that's a disruption that our system can handle. It's not a complete breakdown. But does Edwards talk about that? Well, Edwards doesn't really talk about disruption so much as he talks about incompetent defendants just not being able to uphold their half of the adversarial process. And that's really what Edwards boils down to, is you have defendants who are so – Well, his outburst wasn't anything to do with the adversarial process. It was merely an observation of childhood, his quality of root, and his cognizance. Right. Ultimately, that's what it affects. So it makes it impossible to have a fair trial if somebody's having outbursts and if you can't control it. The problem is that it makes it impossible to have a fair trial. But I don't think the state of the law is it that you have to protect the defendant from the cell? You don't. You don't. I mean, you do get – I thought that was fairly clear in our Supreme Court case. Yeah, I actually agree. And that's why – and that's really the distinction is, you know, what you do have to do on the round is protect the process. If you're so disruptive, you just can't hold your trial. That's when you can take them out of the courtroom and hold your trial. Is there a fine line between the two, or a line that we can distinguish? I think that there can be. I don't know that this case comes anywhere near that line, though. I think that this defendant clearly, you know, all he really did was he might have hurt himself. I don't think that there's really any showing in this record that they couldn't have had a trial here with this defendant representing himself, either because of disruptive behavior. Would standby counsel have solved this problem? Absolutely. Standby counsel would have easily made it possible, and you can do that against the defendant's will. If he was there and if there was an outburst, then the defendant could have been removed. Standby counsel could have stepped in. That would have easily taken care of this. What happens if the pro se defendant is representing himself and doing a fine job, and about halfway through he goes crazy? What happens to the trial? Well, that's, I think, why you would should- Without standby counsel. Yeah, that's why I think standby counsel is a really good idea, because I think that under that circumstance, that could end up just being a mistrial, potentially. I don't, because I don't believe that, I don't believe it's possible for the defendant to be removed and then the trial occur ex parte. No, but can the defendant be removed and counsel appointed subsequently? Could be, and if you could, you know, and that could probably work. You could probably do it that way. Counsel, you have two minutes. Thank you. So, yeah, I do think that, basically, the main point is that standby counsel would have been a great idea. It would have made the flow easier. It's not prohibitive that you couldn't appoint counsel subsequently. Standby counsel, it's just amti. Right, it's not prohibitive. It would have been impossible to do. It would have been a delay, but it would have been doable. So, that was it. Did you have another question? Standby counsel, in the cases with regard to that, and I know in Illinois, I think Justice Miller wrote a decision saying in certain circumstances you have to appoint standby counsel. But, in many cases, the argument on standby counsel is either the counsel has done, interfered too much with the pro se litigant or not done enough with the pro se litigant. It's like a, you know, a no-win situation for standby counsel. Either trying to represent somebody or trying to help. Right, and I think... You've heard those arguments. I have. You've made those arguments. I usually lose, though. I think what the courts say is standby counsel really isn't required to do anything other than be there, you know, just in case. So, as long as standby counsel, you know, errs on that side, he should be fine. Maybe not from me making the argument, but, you know, I don't think the court's going to find him in effect. You've never prevailed on one. I don't think I've ever prevailed on any issue with standby counsel, no. Well, I guess I'll just briefly go through the second issue. I think the second issue is really straightforward. The claims were made in the motion, in the post-trial motion. The judge cut off counsel when he started to argue them. They never got mentioned again. I don't think that that one sentence that the state relies on in its brief really can possibly be interpreted as an inquiry into whether or not counsel was ineffective. And if the judge really was relying on his recollection of the record, which is what the state relies on, then he should have found the possibility to neglect because counsel really did file motions untimely and have them denied on that basis, and counsel really did fail to subpoena a witness. And, okay, thank you. I would ask the seated Your Honors to move back for a new trial or for Baltimore hearing. Thank you. Thank you. Counsel. I pledge the court, good morning, Your Honors. Namaste. Good morning. I apologize by seemingly wasting the court's time. My position is that I don't believe, based on the state of the law, that this court can fashion the remedy that we're necessarily asking for, based upon the current state of the law. The defendant Feretta's rights are usually unassailable, except Edwards did create an exception by, if a defendant has an extreme mental illness, that would affect his ability to conduct his trial adequately. It appears that Mr. Shealy does not suffer from that, based upon the two reports that were issued. He does have impulse control issues, very clearly, and he does have other. Is that an understatement? Perhaps an understatement if you look at his conduct during his stay in the jail, but. Well, can you, is the state of the law that the trial court can speculate? I don't believe the court can speculate.  But can you use the charges of past conduct to base your decision on? The charges of the. Well, what alleged to have happened in the past. Because really all that was, if I recall correctly, was just the state's case in chief. The defense didn't even put on anything, did it? Oh, oh, state did not put anything. Are you talking about the hearing on whether or not. I'm talking about the trial. The trial? Yeah. I guess I'm a little confused. Yeah. Because when the court can make this decision about whether he can represent himself, this is way before the trial and any allegations. Correct. You're talking about a charge of aggravated battery, criminal destruction of property, that sort of thing. An allegation that an incident occurred in the jail. And the state put on the case in chief, which were observation witnesses and supposedly someone who was battered, right? Correct. And what did the defense put on? I don't believe they put on a case. They didn't put on anything, did they? Supposedly they were going to represent or bring in a questioner. Mr. Underwood. Sorry, what? Underwood, yes. Yeah. Who had a different version of events allegedly. Allegedly. Yeah. And this child court denied the defense counsel didn't subpoena him. Well, after the fact, he did not, in fact, subpoena him. Correct. The only person he could give an alternative to other than forcing the defendant to testify. True. I'm not sure how this affects. Well, because of the nature of the charge. If the state charges him with some conduct that arguably might be related to disruptive behavior in the court, then you can use the nature of the charge to make your decision. Well, I don't believe the judge was basing it on the nature of the charge. I believe he was basing it upon the conduct that was noted in the reports that were in the defense counsel's motion. And on the reports of the two professionals who had examined the record and the various DVDs and the various evidence and things like that, it wasn't merely the conduct that was charged that was the basis for this. There was concern, real concern, by the judge that if he gets up there because of his impulse control problems and the various things that he's had, that was the basis for it saying that he cannot. If you get up there. What's your best case for that, that you can do that? I'm sorry? A priori, what's your best case that says trial court can do that? Well, Alan is perhaps the best case as far as if we were to ask the U.S. Supreme Court to expand on that particular issue, that you can use past conduct to determine past conduct and expert testimony about impulse control and ability to control itself as regarding whether or not that type of behavior is the basis for allowing, I guess, defendant denial of self-representation rights. What kind of category is the one that you're fit to stand trial, yet you're not mentally competent to represent yourself, per se? Is there a DSM-IV category for that? I don't believe the court has identified that as a, it was rather, I believe the court was not basing it on a particular DSM-IV category. It appeared that the court was basing it on, what the trial court wanted to do, it seems to me, was protect Sheely from himself. And it said as much. And the question then is, is that allowable under Edwards? Well, under Edwards, purely from a perspective of, if that's the only basis for doing it, then no, it's not allowable under Edwards and Ferreira. Because you cannot protect the defendant from himself, simply because he's not competent to, or I'm sorry, not educated enough or you think he's going to do a bad job at trial. But if you think he's going to be disruptive, if you think, and that's, if you look, that is a statement he makes. He says, well, if you're going to have any other, this was the only trial you're going to have. But he knows if the basis is that he's going to have these outcomes, at least that's what the judge believes is going to happen. And when he makes a ruling that is contrary to Sheely's interests, that's exactly what happens. And the fear is that if he was representing himself and gets up there and the judge starts making, you know. I thought the judge said that his emphasis was that he would, that Sheely would say something or do something that would implicate him in his other multiple trials, the murder trial. And that's why he was wanting him to have a lawyer and not to represent himself. Not that he was worried about the outbursts. I mean, that's kind of something we're talking about here. And it was, I suppose, an underlying symptom of what was going on. But nonetheless, that's what I understood to be the case. Is that wrong? Well, if you look at the, what the judge said is that if you, this could affect your further case, yes. But why is it going to affect his further case? Because he's going to have all these outbursts and he's going to. That is not what he said. The transcript is very clear on that. He says because experienced counsel could draw out damaging information and or admissions from you that might not be important for this trial in front of a jury but might well be lethal to you in a capital murder case. I'm denying your request to represent yourself here. He. Right. Which is no longer the. It was no longer a death penalty case. It should be noted that. Which how could that happen in reality? He doesn't take the standard test. If he's represented, it won't happen. No. If he represents himself and he doesn't take the stand to testify, how can any damaging information be elicited from experienced counsel? From him. Oh, I see. Which is a rationale that the trial court stated on the record. It is. Anything can happen at trial. The problem is that when you have a pro se defendant, they often go off script, so to speak. They do not necessarily strict stick to the essence of. Are we really being very paternalistic in a court system in a policy sense now? I mean. We just pro se's are messy. We don't even like a pro se's argument in front of our court. They're messy. They do things that are kind of just not make us uncomfortable. Is that a rationale? Is that a rationale? For denying them a fundamental right to defend themselves? No. It's not a rationale. Okay. The rationale this trial judge gave was that he would have allowed him to represent himself if the other case wasn't a death penalty case. Is that what he said? I believe that was the gist of it. Yes. So doesn't that make this case very difficult for you? As I mentioned at the start, I don't think this court can grant us the relief that we're seeking. Perhaps this case is not an adequate one to address to higher courts, but it is what it is. Well, if possible, if the trial judge had never spoken, but had ruled under an abusive discretion standard, would your case be easier? Never spoke? Oh. Never articulated? A reason? Perhaps. Well, I would note at the end of my brief, I noted that he had been granted the right to self-representation at his murder trial. Subsequently, he relented and accepted counsel, different counsel. Yes. Apparently, he did not hate. And, well, he was convicted this past Monday as well. Can you address that one issue about the trial court's denying, at the close of the state's case, the defense counsel's subpoena for Underwood? I'm not sure why the court would have denied it other than that it's being last minute, and he could have perhaps made a better effort to have done so. But it's only, I don't know, I can't really address that. Wouldn't it have been nice to have a defense presented? If one was, yeah, sure, of course, it's always nice to have a defense presented. We have a defendant who wants to represent himself, foisted counsel who engages in delay, delay, delay, delay, doesn't subpoena an alternative witness, and then is denied by the trial court after the state's case is put on to subpoena him. I mean, that's the case, isn't it? That's the situation? Yeah. Yes. And would it have changed the outcome of the case? I mean, was it harmless error to have done so, if he had preserved it properly, necessarily? I don't think it would have changed the outcome, even if Underwood had testified, because- It's kind of medical, it's bad. It is extremely overwhelming evidence, so I don't think that particular issue would have changed the result. And thus, even if there was no proper consideration of some of the claims, as noted in the second issue, would that have changed the outcome of the trial? I don't think so. Counsel, you have two minutes. Thank you. However, as you said, it is what I said, it is what it is. Some cases are harder than others. Yes, Your Honor. For the foregoing reasons, we respectfully request this court to take due consideration, as much as it can, of our argument. Counsel? I just have one point that I'd like to make real fast, based on- Can you speak up? I'm sorry. I'm sorry. One point occurred to me during one of the questions that you asked Mr. Rado there, about what the judge actually said, and that the attendant might- experienced counsel might elicit testimony from the defendant. Well, and that occurs to me, that's because that would have the defendant testify, right? And it has nothing to do with whether or not he would have been represented by counsel or not. And would we ever say that the defendant could not testify because- should he deny his right to testify because he might have an outburst? No. And because, obviously, we would never do that, and that's a constitutional right. Well, so is the right to self-representation. And that's why it's dangerous to expand this Hilliard v. Allen or Edwards v. Vienna line of cases beyond where they're supposed to go. Because you could end up with a ridiculous situation where you're saying the defendants can't testify because you can't trust them to say- not to say bad things. So that's just one point that illustrates why you don't want to expand those cases. Without expanding those cases, I don't think there's any way that they really reach this case. Do you think it was laudable what the trial judge wanted to do? He had good intentions. It may not have been appropriate, but I mean, do you think it was a laudable act? I think he had good intentions. Although, you know, I wonder how much of it was to help Mr. Schiele and how much of it was to help his fellow judge in Knox County, independent from having to try the murder case twice. But, yeah, he had good intentions. And, unfortunately, that's just not something that we allow under the law. And it's not something we should allow under the law because defendants do have these rights and they should be allowed to exercise them. Unless, you know, it's a very extreme case, then this isn't one of those. With that, thank you for your time. I'm asking you again to call us forward for your trial. Thank you, counsel. The court will take a recess for a panel change. We will take this case under advisement and render a decision. Thank you. The court is now in recess.